[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION STATEMENT OF THE CASE
Plaintiff, Peter Ertel, appeals pursuant to section 4-183
of the General Statutes, the decision of the defendant Department of Environmental Protection (the "DEP") ordering the plaintiff to remove all docks, pilings, floats, piers, riprap, etc., seaward of the high tide line at his property in Old Saybrook.
FACTS
The record reveals that the plaintiff, Peter Ertel, purchased the property, including the disputed dock, in August, 1981. The plaintiff applied to the DEP for a permit to extend the dock on March 30, 1982. The permit was issued on June 3, 1982. It allowed the plaintiff to add a sixty-foot extension, a "T-head" extension, six pilings, and seventy feet of riprap. The permit required all construction to be completed by June 3, 1985.
On August 26, 1985, the neighboring land-owner, Oak Leaf Marina, Inc., had its attorney contact the DEP regarding the plaintiff's failure to comply with the terms of the permit. A DEP inspection revealed that the plaintiff's dock, which was completed in 1984, did not conform to the permit because: (1) the pilings were placed thirty-two feet away from the dock's centerline instead of twenty feet away, as specified in the permit; (2) the decking was four feet wide instead of three feet wide; (3) the dock had twenty-two slips instead of eighteen; and CT Page 4010 (4) the plaintiff removed a pre-existing "dog-leg" in the dock without permission to do so.
The plaintiff alleges that the Army Corps of Engineers had granted him permission to remove the dog-leg, and that the DEP received a copy of the Corps of Engineers correspondence. However, the DEP objected to this change and had informed the plaintiff by letter dated December 30, 1985 that "to avoid permit suspension or revocation, you must relocate the pilings to a distance no greater that twenty feet from the pier" by April 15, 1986. The DEP claims that plaintiff did not relocate the pilings.
On March 6, 1986, the plaintiff submitted an application for a new permit with modified construction plans. After an initial review, the DEP requested additional information and scheduled a public hearing. On March 31, 1987, the plaintiff requested withdrawal of this second permit application. The DEP accepted plaintiff's amended application for expansion of the existing dock on November 30, 1987, pending a review for completeness and a public hearing. Plaintiff states in his brief that no action has been taken on this amended application.
In September of 1988, by way of a notice of permit revocation and order to remove existing structures, the DEP revoked the plaintiff's permit and directed the plaintiff to remove all docks, pilings, floats and piers located seaward of the high tide line on his property. The revocation was predicated upon the Commissioner's conclusion that the plaintiff violated General Statutes 22a-359 through 22a-363. On October 14, 1988, the plaintiff filed a notice of intent to contest the revocation and requested an administrative hearing.
On November 15, 1988, the DEP granted a motion for permission to intervene as a party filed by Scott and Sherry Masse, the owners of Oak Leaf Marina, Inc. (located adjacent to the plaintiff's property). The intervening parties claimed that the plaintiff's dock interfered with their littoral rights and therefore constituted a nuisance. Then on March 29, 1989, the plaintiff filed an amended answer to the DEP's revocation order, along with two special defenses and an offer to enter into a consent order whereby plaintiff would reconfigure the dock.
An administrative hearing was held on March 30, 1989. The adjudicator issued a final decision and order on May 9, 1989, affirming, inter alia, the Commissioner's revocation of plaintiff's permit and order to remove the dock. In so doing, the adjudicator found:
(1) that the property is a tidal, CT Page 4011 coastal and navigable water of the state;
 (2) that all work seaward of the high tide line is regulated by sections 22a-359 to 22a-363 of the General Statutes, as amended by Conn. Pub. Act 87-495;
 (3) that all dock construction and modification work requires a permit under 22a-351;
 (4) that the permit issued to the plaintiff on June 3, 1982 authorized construction of:
(a) a 60-foot dock extension,
 (b) pilings placed 20 feet from the centerline of the dock,
(c) three-foot wide decking, and
 (d) a "zig-zag" in the configuration of the dock;
 (5) that subsequent construction did not conform to the permit because:
 (a) the pilings were placed 32 feet from the centerline,
(b) the decking was four feet wide, and
(c) the "zig-zag" was removed;
 (6) that on December 30, 1985, the DEP notified the plaintiff by letter and required the plaintiff to bring all structures into compliance by April 15, 1986;
 (7) that the plaintiff failed to do so, and the failure has continued to date;
 (8) that on September 23, 1988, the plaintiff maintained an "L-shaped" floating dock which was not shown on any permits, plans or applications;
(9) that the plaintiff has continuously CT Page 4012 exceeded the scope of his original permit; and
 (10) that the plaintiff has knowingly and willfully failed to remove unauthorized structures in a regulated area and thereby violated sections 22a-359 to 22a-363 of the General Statutes.
Plaintiff appeals this decision.
The final decision was mailed to the plaintiff on May 10, 1989. The appeal was filed with the clerk of the court on June 6, 1989. Named as defendants are Leslie Carothers, Commissioner of the DEP; Oak Leaf Marina, Inc., and Scott and Sherry Masse. On June 2, 1989, the plaintiff, by sheriff, left true and attested copies of the original writ, summons, complaint and a motion for stay with: (1) Bernard F. McGovern, Associate Attorney General, "authorized to accept service for" the defendant Commissioner; (2) Stephen Richard, Esq., "authorized to accept service for" Oak Leaf Marina and Scott and Sherry Masse; and (3) the DEP Commissioner's secretary, "authorized to accept service for" the Commissioner.
The defendant Commissioner of the DEP filed the record of the administrative proceeding on September 1, 1989. The Commissioner's answer was filed on September 7, 1989. The plaintiff filed a brief in support of his appeal on November 7, 1989. The Commissioner filed a brief on January 2, 1990. Oak Leaf Marina and the Masses filed an appearance, but no answer or brief.
In his complaint, the plaintiff alleges, inter alia, that the defendant Commissioner acted in excess of the agency's statutory authority and rendered the decision upon unlawful procedure. The plaintiff also alleges that the decision was arbitrary, capricious, and characterized by abuse of discretion in that; (1) the DEP failed to find estoppel based on its action and inaction, as well as the plaintiff's change in position in reliance thereon; (2) the DEP improperly revoked the plaintiff's permit pursuant to General Statutes 4-182; (3) the DEP failed to give the plaintiff the opportunity to show compliance with the permit; (4) the DEP erroneously found that the plaintiff willfully violated the permit; (5) the DEP failed to place a witness under oath pursuant to General Statutes 4-177; and (6) the DEP rendered a decision that is "contrary to the evidence and contrary to the law." The plaintiff now asks that the court: (1) vacate and set aside the final order; or (2) modify the final order so that a smaller dock may be maintained pursuant to the initial permit; and (3) award any other relief that law and equity may provide. CT Page 4013
JURISDICTION
Appeals to courts from administrative agencies exist only under statutory authority. Killingly v. Connecticut Siting Council, 220 Conn. 516, 621, ___ A.2d ___ (1991). "A statutory right to appeal may be taken advantage of only by strict compliance with the statutory provisions which create it." Citizens Against Pollution Northwest, Inc. v. Connecticut Siting Council, 217 Conn. 143, 152, 584 A.2d 1183 (1991) (Citations omitted). Appeals from decisions of the DEP may be taken pursuant to General Statutes 4-183 (Rev. to 1989).
The UAPA was significantly revised, effective July 1, 1989, by Conn. Pub. Acts No. 88-377. All agency proceedings commenced prior to July 1, 1989 are governed by the law in effect when the proceeding was commenced. See General Statutes (Rev. to 1991)4-185; Miko v. CHRO, 220 Conn. 192, 196 n. 3, 596 A.2d 396
(1991). Since the agency revocation proceedings were commenced in September, 1988, and the appeal was commenced on June 6, 1989, this proceeding is governed by the law in effect prior to July 1, 1989. See Vernon Village v. Carothers, 217 Conn. 130,138, 585 A.2d 76 (1991).
Aggrievement
Section 4-183 (a) of the UAPA provides that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision in a contested case is entitled to judicial review by way of appeal under this chapter. . . ." General Statutes (Rev. to 1989) 4-183 (a). Unless a party can establish aggrievement, he has no standing to appeal under the UAPA. Light Rigging Co. v. DPUC, 219 Conn. 168, 172,592 A.2d 386 (1991). The party claiming aggrievement must demonstrate a specific, personal and legal interest in the subject matter of the decision, as opposed to a general interest shared by the community as a whole. Light Rigging, supra, 173. The party must also establish that this interest has been specially and injuriously affected by the decision. Id. "Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest. . .has been adversely affected." State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 300,524 A.2d 636 (1987) (Citation omitted).
The plaintiff has a specific personal and legal interest in the decision because he owns the subject property and the dock, and he has a commercial and financial interest in the dock. The plaintiff's legal interest has been specially and injuriously affected by the final order because it requires removal of the CT Page 4014 entire dock, and prevents him from engaging in his dock-space rental business, and interferes with his personal use of his property, including the dock. For those reasons, the court finds that the plaintiff is aggrieved.
Statutory time limits must be strictly complied with if a court is to maintain jurisdiction. Scinto v. State Codes and Standards Committee, 24 Conn. App. 44, 48, 585 A.2d 701 (1991) (serve within 30 days and file within 45 days under 4-183 prior to July 1, 1989 amendments to UAPA); Chestnut Realty, Inc. v. CHRO, 201 Conn. 350, 356, 514 A.2d 749 (1986). The failure to file an appeal from an administrative decision within the time set by statute renders the appeal invalid and deprives the courts of jurisdiction to hear it. Ierardi v. CHRO, 15 Conn. App. 569,574, 546 A.2d 870 (1988), cert. denied, 209 Conn. 813
(1988).
Section 4-183 (b) provides that "[p]roceedings for such appeal shall be instituted by filing a petition in superior court. . .within forty-five days after mailing of the notice of the final decision of the agency. . . ." General Statutes (Rev. to 1989) 4-183 (b). Notice of the final decision was mailed on May 10, 1989, and the petition was filed with the superior court on June 6, 1989, well within the forty-five day period.
Section 4-183(b) also provides:
 . . . . Copies of the petition shall be served upon the agency and all parties of record within thirty days after mailing of such notice. . .except that service upon an agency may be made by the appellant mailing a copy of the petition by registered or certified mail. . .to the office of the commissioner of the agency or to the office of the attorney general in Hartford.
General Statutes (Rev. to 1989) 4-183 (b).
Notice of the final decision was mailed on May 10, 1989. On June 2, 1989, the plaintiff, by sheriff, served true and attested copies of the original writ, summons, complaint and a motion to stay with: (1) Bernard F. McGovern, Associate Attorney General, "authorized to accept service for" the defendant Commissioner; (2) Stephen Richard, Esq., "authorized to accept service for" Oak Leaf Marina, Inc., and Scott and Sherry Masse; and (3) the DEP Commissioner's secretary, "authorized to accept service for" the Commissioner. CT Page 4015
While service appears to have occurred within the required thirty-day period, service was improper and, therefore, not timely. A "party" is defined under the UAPA as "each person or agency named or admitted as a party. . . ." General Statutes (Rev. to 1989) 4-166 (5). All of the parties named or admitted as parties in the administrative proceeding constitute "parties of record," and the plaintiff is obliged to serve them in bringing his appeal. See Hillcroft Partners v. CHRO, 205 Conn. 324, 326,533 A.2d 852 (1987). "Except as otherwise provided, process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode." Tarnopol v. Connecticut Siting Council, 212 Conn. 157, 161, 561 A.2d 931
(1989), quoting General Statutes 52-57 (a).
The person to whom in hand or abode service must be made when an entity such as a corporation is named as a defendant in a civil action is set forth in 52-57 (c). Id. Section 52-57 (c) states:
 (c) In actions against a private corporation, service or process shall be made either upon the president, the vice president, an assistant vice president, the secretary, the assistant secretary, the treasurer, the assistant treasurer, the cashier, the assistant treasurer, the cashier, the assistant cashier, the teller or the assistant teller or its general or managing agent or manager or upon any director resident in this state, or the person in charge of the business of the corporation or upon any person who is at the time of service in charge of the office of the corporation in the town in with its principal office or place of business is located. In actions against a private corporation established under the laws of any other state, any foreign country or the United States, service of process may be made upon any of the aforesaid officers or agents, or upon the agent of agents, or upon the agent of the corporation appointed pursuant to section 33-400.
General Statutes (Rev. to 1989) 52-57 (c).
"`[T]here is no substitute for `in hand' or abode service. . . where jurisdiction over the person of a resident individual is sought,' unless a statute provides otherwise." Tarnopol, supra, 163 citing White-Bowman Plumbing Heating, Inc. v. Biafore,182 Conn. 14, 16-17, 437 A.2d 833 (1980). The only statutory exception to in hand or abode service on defendants that reside in or have agents located in Connecticut is set out in CT Page 40164-183 (b). Id., 161-62. Because the appeal provisions of4-183 (b) are jurisdictional in nature, failure to comply with this section renders the appeal subject to dismissal for want of jurisdiction. Id., 163 (Citations omitted).
In Tarnopol, the defendants moved to dismiss the plaintiff's administrative appeal because the plaintiff did not comply with the service of process requirements of4-183 (b), as the plaintiff failed to make in hand or abode service on all parties of record. Id., 159. The trial court's granting of the motion to dismiss was subsequently upheld by the supreme court.
The court held that while the defendant council could properly be served by certified mail under the exception contained in 4-183 (b), "it was incumbent upon the plaintiffs under 4-183 (b), 52-54 and 52-57 to make in hand or abode service on each of the remaining parties." Id., 162-63. The plaintiffs in Tarnopol did not do so, but rather served each party or the party's attorney, by certified mail. Id., 163. The plaintiffs' failure to serve each party properly rendered the action subject to dismissal for lack of subject matter jurisdiction. Id., 163-66.
In the present case, the defendants Scott and Sherry Masse and Oak Leaf Marina, Inc. were granted permission to intervene as parties in the underlying administrative proceeding. In commencing this appeal, the plaintiff served their attorney, Stephen Richard, instead of serving the parties according to the applicable statutes. Under the UAPA prior to the July 1, 1989 amendments (the version of the UAPA which applies to this action), the failure to serve a party of record pursuant to General Statutes 4-183 (b) is a jurisdictional defect which warrants dismissal of the appeal. Tarnopol, supra, 163, 166. It is incumbent upon the plaintiff to make in hand or abode service pursuant to 4-183 (b), 52-54 and 52-571a) on defendants Scott and Sherry Masse, and to serve defendant Oak Leaf Marina, Inc. pursuant to 52-57 (c). Accordingly, because the plaintiff failed to comply with these provisions, his appeal is subject to dismissal for lack of subject matter jurisdiction. The court, however, will discuss the merits of the appeal, as well.
Section 4-183 sets forth the scope of review as follows:
SCOPE OF REVIEW
 (g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the CT Page 4017 case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of the administrative findings, inferences, conclusions or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
General Statutes (Rev. to 1989) 4-183 (g).
The UAPA governs judicial review of an administrative agency's action. Miko, supra, 200. The scope of that review is very limited. Connecticut Light Power v. DPUC, 219 Conn. 51,57, 591 A.2d 1231 (1991). The court is not to substitute its judgment for that of the agency, but is only to determine whether, in light of the evidence, the agency acted unreasonably, arbitrarily, or in abuse of its discretion. Id., 57-8.
The determination of issues of fact by the administrative agency should be upheld if the record before the agency affords a substantial basis of fact from which the fact in issue can be reasonably inferred. Miko, supra, 200-201. Ultimately, the question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the action taken. Id., 201.
Judicial review of administrative conclusions of law is also limited as "[c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." New Haven v. FOIC, 205 Conn. 767, 774, 535 A.2d 1297
(1988) (Citations omitted). Where "one of the stated reasons is sufficient to support the action of the commission, then that action should be sustained by the court." Id. at 778 (Citations omitted).
The court concludes that the plaintiff's appeal must be dismissed because the plaintiff failed to comply with the service provision of General Statutes 4-183 (b), 52-54 and52-57, and, in addition, on the merits, because the administrative findings are not: (1) in violation of CT Page 4018 constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedure; (4) affected by other errors of law; (5) clearly erroneous in view of the reliable, probative and substantial evidence on the whole record; or (6) arbitrary, capricious or characterized by abuse of discretion.
SUBSTANTIVE ISSUES
The plaintiff's first two arguments pertain to the DEP's power to act upon the plaintiff's expired permit. The plaintiff obtained his permit on June 3, 1982, completed construction of the dock in 1984, and the permit expired on June 3, 1985. The plaintiff contends that the DEP lacked subject matter jurisdiction to revoke his permit because it expired prior to September 30, 1989, the date that the notice of permit revocation was issued. The plaintiff also contends that the Commissioner's power to revoke a permit for non-compliance with the terms of that permit, which power was granted to the DEP pursuant to the 1987 amendment of General Statute 22a-362, cannot apply here because it would constitute a retroactive application of the 1987 amendment to the plaintiff's expired permit.
In response, the Commissioner contends that the agency has subject matter jurisdiction over the revocation proceeding because the Commissioner has the power to proceed against the plaintiff's structure. The Commissioner also contends that the 1989 revocation proceeding was not a retroactive application of the 1987 amendment to the General Statutes to the plaintiff's permit, which expired in 1985.
The Commissioner's broad regulatory powers and jurisdiction over structures located within the coastal or navigable waterways are not limited only to the construction phase of these structures. Section 22a-361 (a), which specifically gives the Commissioner the power to issue construction permits, states that:
 No person. . .shall dredge, erect any structure, . . . .or carry out any work incidental thereto or retain or maintain any structure. . .in the tidal, coastal or navigable waters. . .until such person. . .has submitted an application and has secured from said commissioner a certificate or permit for such work and has agreed to carry out any conditions necessary to the implementation of such certificate or permit.
General Statutes (Rev. to 1989) 22a-361. CT Page 4019
Section 22a-361 (c) further empowers the Commissioner to adopt regulations, procedures and criteria for "granting, denying, limiting, conditioning or modifying permits." General Statutes (Rev. to 1989 22a-361 (c). Standard condition number 3, contained in the plaintiff's 1982 permit states that:
 All work and all regulated activities shall be consistent with the terms and conditions of this permit. Any structures, excavation, fill, obstructions, encroachments or regulated activities not specifically identified and authorized herein shall constitute a violation of this permit and may result in its modification, suspension, or revocation. Upon initiation of the activities authorized herein, the permittee thereby accepts and agrees to comply with the terms and conditions of this permit.
(Exhibit 1) (Emphasis added). Thus, the Commissioner may act to suspend, condition, modify or revoke a permit whenever it is determined that the structure violates the terms and conditions of the permit.
Further, the Commissioner may act at any time, even after the permit expires, as long as a violation of that permit exists. Standard condition number 2 of plaintiff's 1982 permit states that "[i]f the authorized activity is not completed on or before June 3, 1985 said activity shall cease and, if not previously revoked or specifically extended, this permit shall be null and void." (Emphasis added) (Exhibit 1). Thus, based on the plain language of the permit, the expiration date applies only to the plaintiff's right to construct a dock, and not to the Commissioner's power to regulate the dock built pursuant to the permit based on the terms expressed therein.
The plaintiff also argues that General Statutes 25-7e should be applied to the present case. This section states that:
 Any structure, obstruction or encroachment placed in the tidal, coastal or navigable waters of the state or any activity carried out incidental to the construction or maintenance of such structures or encroachments without a certificate or permit from the commissioner shall be considered a public nuisance. The attorney general shall, at the request of the commissioner, institute CT Page 4020 proceedings to enjoin or abate any such nuisance.
This section was replaced by 22a-362 in 1983, and amended in 1987 to read:
 . . .any structure, fill, obstruction or encroachment placed in the tidal, coastal or navigable waters of the state waterward of the high tide line or any activity carried out incidental to. . .the construction or maintenance of such structures or encroachments without a certificate or permit from the commissioner or in violation of the terms or conditions of such permit shall be considered a public nuisance. The attorney general shall, at the request of the commissioner, institute proceeding to enjoin or abate any such nuisance.
General Statutes (Rev. to 1989) 22a-362. (Emphasis added). The plaintiff asserts that prior to the 1987 amendment, the Commissioner lacked the power to proceed against a structure that violates the terms of its permit, and could only proceed against structures built without a permit.
The plaintiff's argument fails for two reasons. First, assuming arguendo that only 25-7e applies, this provision states only that "[a]ny structure. . .placed in the . . .navigable waters. . .without a certificate or permit. . .shall be considered a nuisance." While it is silent with respect to the action that the Commissioner may take with respect to a permitted structure which violates the terms of its permit, any structure that is built but not authorized by the existing permit can be said to have been built without a permit, as standard condition number 3 of the plaintiff's permit states that "[a]ny structures. . .not specifically identified and authorized herein shall constitute a violation of this permit and may result in its modification, suspension or revocation. . . ." (Exhibit 1). Furthermore, standard condition number 8 states that:
 This permit is subject to and does not derogate any present or future property rights or other rights or powers of the State of Connecticut, and conveys no property rights in real estate or material nor any exclusive privileges, and if further subject to any and all public and private rights and to any federal, state, or local laws or regulations pertinent to the property or CT Page 4021 activity affected hereby.
(Exhibit 1). Accordingly, under the broad reservation of regulatory power, the Commissioner had the power to proceed against the plaintiff's nonconforming structure despite the statute's silence.
Second, in the final decision, the adjudicator found that the plaintiff "has never complied with the terms of his permit", never "attempted to physically bring the structure into compliance with the. . .permit." The plaintiff's noncompliance was of a continuous and ongoing nature, and existed at the time of the administrative hearing. Thus, the adjudicator did not have to apply the law as it existed at the time that the permit as in effect (1982, when 25-7e was in effect). Rather, since the hearing concerned a structure that was in a continuous state of noncompliance, the adjudicator's use of 22a-362 did not constitute a retroactive application of that statute.
In his third argument, the plaintiff contends that his existing permit cannot be revoked until his latest application, dated November 30, 1987 has been finally determined by the DEP. In response, the Commissioner argues that General Statutes4-182 (b), which governs renewal of licenses, is inapplicable to the facts of this case.
Section 4-182 (b) reads, in pertinent part, "[w]hen a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, the existing license shall not expire until the application has been finally determined by the agency. . . ." General Statutes (Rev. to 1989) 4-182 (b). The adjudicator found that the plaintiff's original permit expired on June 3, 1985. The adjudicator also found that there was no evidence in the record which indicated that the DEP extended the permit beyond its expiration date and that plaintiff's subsequent permit applications (dated March 6, 1986 and November 30, 1987) did not incorporate either the existing structure design or the design represented in the original permit.
The adjudicator's conclusions on this point are reasonable and supported by evidence. The original permit expired well before the plaintiff applied for his subsequent permits and, thus, 4-182 (b) does not apply because the plaintiff failed to make a timely application for a new permit before his original permit expired. The two subsequent permits were for expansion of the dock in question, which is a separate and distinct matter from that of bringing the existing dock into conformity with the expired permit. CT Page 4022
Next, the plaintiff argues that the DEP's decision was erroneous, arbitrary, capricious and in abuse of discretion because it failed to find estoppel based upon the agency's actions and inaction, and the plaintiff's change in position and reliance thereon.
A claim of estoppel must be predicated upon proof of the following essential elements: (1) the party against whom estoppel is claimed must do or say something calculated or intended to induce another party to believe that certain facts exist and to act on that belief; and (2) the other party must change its position in reliance on those facts, thereby incurring some injury. Middlesex Mutual Assurance Co. v. Walsh,218 Conn. 681, 699, 590 A.2d 957 (1991) (Citations omitted). Although estoppel may not generally be invoked against a public agency in the exercise of its governmental functions, an exception is made where the party claiming estoppel would be subjected to a substantial loss if the municipality were permitted to negate the acts of its agents. Zoning Commission v. Lescynski, 188 Conn. 724, 731, 453 A.2d 1144 (1982) (Citation omitted). The person claiming the estoppel has the burden of showing that he exercised due diligence to ascertain the truth and that he not only lacked knowledge of the true state of things but had no convenient means of acquiring that knowledge. Dupuis v. Submarine Base Credit Union, Inc., 170 Conn. 344, 353,365 A.2d 1093 (1976).
At the administrative hearing, the adjudicator made the following findings of fact: (1) that the plaintiff never complied with the terms of the 1982 permit; (2) that the plaintiff did so despite a December 30, 1985 letter from the DEP notifying the plaintiff that his dock did not conform to the permit; and (3) that the plaintiff failed to bring the dock into compliance within the April 9, 1986 deadline given by the DEP.
The adjudicator's conclusions on this point are reasonable and supported by evidence. Since the DEP sent the plaintiff a letter warning him that his dock was not in compliance and that his permit would be revoked if he failed to bring it into compliance by April, 1986 it is reasonable to conclude that the plaintiff had no basis to believe that he could maintain a nonconforming dock. Thus, plaintiff's claim of inducement must fail. Because the plaintiff's dock never complied with its original permit, it is reasonable to conclude that the plaintiff did not change his position in reliance upon any action or inaction on the part of the DEP. Thus, his estoppel argument must fail.
The plaintiff's fifth argument is that the hearing CT Page 4023 officer's decision was rendered upon unlawful procedure because the DEP's representative testified without being placed under oath. In response, the Commissioner argues that this irregularity does not invalidate the entire administrative hearing.
Judicial review of the administrative process is meant to assure that administrative agencies act on evidence which is probative, reliable and that they act in a manner consistent with the requirements of fundamental fairness. Feinson v. Conservation Commission, 180 Conn. 421, 429, A.2d 910 (1980). Section 4-177b of the UAPA provides that ". . .the presiding officer may administer oaths, take testimony under oath relative to the case, subpoena witnesses and require the production of records. . . ." General Statutes (Rev. to 1989) 4-177b. Section4-183 (g)(5) states that "[t]he court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences or conclusion are. . .clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. . . ." General Statutes (rev. to 1989) 4-183 (g)(5). The plaintiff must demonstrate that his "substantial rights" have been prejudiced. Tomlin v. Personnel Appeal Board, 177 Conn. 344,348, 416 A.2d 1205 (1979). Under the "substantial evidence" test, the mere erroneous admission of evidence will not invalidate an administrative decision unless substantial prejudice is shown. Id.
A DEP environmental analyst testified at the March 30, 1989 hearing. Both the plaintiff and the DEP acknowledge that the adjudicator failed to place her under oath. Even assuming arguendo that the analyst's statements are not admissible due to this error, a review of the final decision shows that the adjudicator's conclusions were not based wholly on this testimony. Rather, the record of the proceedings reveals that even without the analyst's statements, there is substantial and reliable evidence supporting the adjudicator's conclusions in the form of: (1) the original permit; (2) the DEP notice of violation; (3) the notice of permit revocation; (4) various photographs of the plaintiff's dock; (5) the DEP's coastal permit complaint form; (6) transcripts from the plaintiff's deposition in a related civil action; and (7) the plaintiff's sworn testimony from the hearing. The plaintiff fails to demonstrate or allege that his substantial rights were prejudiced, as required by General Statutes (Rev. to 1989)4-183(g)(5). Therefore, the adjudicator's failure to place the analyst under oath does not require reversal of the whole administrative proceeding, as the adjudicator's conclusions are reasonable and supported by reliable and substantial evidence. CT Page 4024
In his final argument, the plaintiff contends that his dock configuration is in substantial compliance with his permit, and any variation therefrom was not willful. However, at the hearing, the adjudicator made the following findings of fact: (1) that from June 3, 1982 until the present, the plaintiff has never complied with the terms of his permit; (2) that the plaintiff has increased the number of slips by 22% and the size of the slips by 60%; (3) that the plaintiff maintained the unauthorized structure despite a December 30, 1985 letter from the DEP notifying plaintiff that the structure did not conform to the terms of its permit; and (4) that the plaintiff knowingly and deliberately built the structure differently from the permitted plans, both to accommodate a special boat and to receive monies for renting out slips.
The plaintiff's "substantial compliance" argument is merely an attempt to reargue the facts. The "substantial evidence" rule governs judicial review of administrative factfinding. Miko, supra, 220. Substantial evidence exists if the administrative record demonstrates a substantial basis of fact from which the fact in issue can be reasonably inferred. Connecticut Light Power v. DPUC, 219 Conn. 51, 57,591 A.2d 1231 (1991). The determination of issues of fact by the administrative agency should be upheld if the record before the agency affords a substantial basis of fact from which the fact in issue can be reasonably inferred. Miko, supra, 200-01.
The adjudicator's conclusions regarding the plaintiff's noncompliance are reasonable and supported by substantial evidence, as the record demonstrates that the plaintiff failed to comply with the terms of his permit, and that he had notice and warnings regarding his noncompliance. The agency's decision must be upheld because it can be reasonably inferred from the record that the plaintiff knowingly and willfully failed to comply with the terms of his permit.
Accordingly, for all the foregoing reasons, the appeal is dismissed.
SCHALLER, J.